Price, J.
The only question we have to answer is — did the trial court err in directing a verdict for the defendant?
The plaintiff in error by her counsel early in the brief, states that she does not claim a right to recover on an implied contract, but does claim'that the evidence' was sufficient to show an express contract, and if that is not true, the law made it the duty of the city council to publish the matter published by plaintiff, and that “there is sufficient evidence in the case to show that the city council authorized its publications both before and after the ordinances, resolutions and notices were published.” The admission that plaintiff could not recover of the city on an implied contract is the recognition of what we have' repeatedly decided, when parties soug'ht to hold a municipal corporation liable on quantum memdt, or implied contract. See City of Wellston v. Morgan, 65 Ohio St., 219. The amended petition is somewhat barren of averment that there was an express contract upon which a right of recovery is predicated. We have set out in the statement of this case the body of the amended petition, except the exhibit called the account attached, and we find no allegation that the publications were made in pursuance of a con *252 tract for that purpose with anyone. The nearest approach to the declaration of an express contract is couched in the languáge, “at the request of said city, by its auditor and clerk, and approved by its city solicitor, this plaintiff began the publication in said newspaper for and on behalf of said city, certain ordinances, resolutions and legal notices furnished to her by and on behalf of said city, and as were required by law to be published in two newspapers of opposite politics within said city.” There is no averment that either of the above officers were duly authorized, and when we examine Section 1536-647, Revised Statutes, which prescribes the duties of the clerk, we find that it does not make it his duty to make contracts for such printing, and it is not alleged that there was any ordinance of .the city to that effect. The plaintiff then proceeds to allege that she continued to publish all such ordinances, resolutions and legal notices furnished her for that purpose by the city until and including February 16, 1906. While it is averred that these publications were made “at the request of said city by its auditor and clerk of council and approved by its city solicitor,” nothing more appears in the petition to constitute an express contract. These words are common in a petition on an account, and fall short of setting out an express contract. It might be that on such a petition, a court might permit evidence to be given of an express contract, but we are not deciding that question here, if the evidence in the record follows the averments of the petition and fails to make a case on express contract.
*253 A careful consideration of the amended petition leads us to the conclusion that it makes nothing more .than a suit on an account. There is not an allegation that any officer of the city contracted with the plaintiff for the publication of the ordinances, etc.; and no price was named for the work —but merely that it was done at request of the city auditor and clerk of council. This amended petition was not tested by a demurrer, or by objection to the introduction of testimony under it, or perhaps the intervention of a jury might have been avoided.
In order to relieve the amended petition from objection on account of its lack of averments of contract, we are pressed with the statement, that the city or village council is required to publish ordinances, etc., in two newspapers of opposite politics published and of general circulation in the city. The following is part of Section 1536-619, which prescribes the duty: “All ordinances and resolutions requiring publication shall be published in two newspapers of opposite politics, published and of general circulation in such municipality, if such there be * * * .” It is claimed, therefore, that publication in that manner is mandatory, and for that reason no express contract is necessary. To this claim is added another, that Section 4366, Revised Statutes, fixes the rates per square for each publication which left mere clerical duty for the clerk to perform in calculating the cost of publication. But it must be observed that this statute fixes maximum rate, and no minimum rate. Hence it is practicable to contract for a much lower rate than the maximum and thereby *254 make large savings for the city or village. The printing bills in the larger municipal corporations loom up to large proportions at times, and the legislature has not undertaken to prevent the obtaining-the publication or advertising at as low rate as may be agreed upon.
In the case at bar, it appears that the council took no action by ordinance or resolution to determine what, if any, publication should be made in plaintiff’s paper, and no ordinance or resolution is shown directing or authorizing the city clerk or anyone to contract with the plaintiff. It seems there was a contract made with the other paper in the city. At least that is conceded in the record and briefs.
If asked, as it was in argument, who can enter into such contracts on the part of the city, we can refer to Sections 1536-617 and 1536-618, Revised Statutes, as furnishing at least one mode of providing for the necessary legal printing. By virtue of the latter section, the powers of the city or village council are legislative only, and it shall perform no administrative duties whatever. “All contracts requiring the authority of council for their execution shall be entered into and conducted to performance by the board of officers having charge of the matters to which they relate, and after authority to make such contracts has been given and the necessary appropriation made, the council shall take no further action thereon.”
It would seem that the council may authorize, by resolution or ordinance, the board or department of public service to contract for the public printing, and we see no valid objection to giving *255 the clerk of council the authority to make such contracts. The council appears to be the source of authority to contract, and it is the authority to make the necessary appropriations. Conferring such authority on the clerk of council would be consistent with his duties under Section 1536-653, Revised Statutes. It reads: “In corporations in which there is no city auditor, the clerk shall perform the duties of auditor, under the direction of the council, and such other duties pertaining to his office as may be prescribed by the council; and he shall have the charge and custody of the laws and ordinances, and the books, records, and papers of the corporation, and shall carefully keep and preserve them in his office, and shall prepare and certify all transcripts that may be required of. any record or paper in his office, and shall be entitled to receive therefor the same fees as other officers for similar services.”
The court having directed a verdict for the city, it becamé our duty to read the' evidence in the record. We have performed that duty, and find there is no evidence tending to prove that any contract was made with plaintiff below for the publications detailed in her petition.
There was doubt entertained about the politics of plaintiff’s paper. The 'News was a Republican paper, and the plaintiff’s paper had been published as independent of or in politics, whatever that may be. After presentation of the first bills to council for allowance, the plaintiff was waited on by one .or more of the officials and inquiries made as to the political complexion of the paper. Although it had not changed its name, she asserted that it had *256 recently become Democratic. The visitors could find but little in the files of the paper to support a conversion, and would not be satisfied with an affidavit of the publisher that the paper was of Democratic politics. They hesitated to believe that political complexion could be put on and off like an article of personal raiment. But this was not the only objection to payment, for it appears on page 90, and other pages of the record, that the principal ground of objection was the absence of authority to engage the plaintiff to make the publications. When asked about the circulation of her paper, the plaintiff declined to give the information, and there is little if anything to show that it was a paper of general circulation in that city.
As we read the record, the plaintiff at one time thought that an independent paper was opposite in politics to the Republican organ. When this was disputed, chameleon like, a change had come over it, and it was then Democratic. The interviews and other facts attending the presentation and discussion of these printing bills show that the plaintiff had no contract with anyone — certainly with no one authorized to represent the city.
It is to be feared, that when the oaoer acquired the prooer politics, she concluded that the law requiring oublication in two papers of opposite politics was her sole reliance and that she regarded the dutv of the city to be mandatory with reference to her newspaper, contract or no contract. In this she made a mistake, for it cannot be within the power of anyone to thus force his services upon *257 the city and compel it to pay for what it never agreed to pay.
Taking the petition and the evidence, we are of opinion that the trial court correctly ruled, and that the circuit court did not err in affirming its judgment.

Judgment affirmed.

Crew, C. J., Summers, Davis and Shauck, JJ., concur.